UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LADD LANDING, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-596 |
| | ) | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendant, Tennessee Valley Authority's ("TVA's"), Motion for Judgment on the Pleadings as to Three Plaintiffs, Eye Centers of Tennessee, LLC, Browder Hardware Inc., and Sean D. Stephens, for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. 13]. In the motion, TVA asserts that these plaintiffs cannot recover for solely economic loss without any allegation of injury to person or physical damage to property. Plaintiffs have responded in opposition [Doc. 21] to TVA's motion, and TVA has filed a reply brief [Doc. 36]. After carefully considering the parties' arguments and the relevant law, and for the reasons stated herein, TVA's motion [Doc. 13] will be **GRANTED** and the claims of plaintiffs, Eye Centers of Tennessee, LLC, Browder Hardware Inc., and Sean D. Stephens, will be **DISMISSED** from this action.

**I.     Relevant Facts**

This action, brought by forty-four plaintiffs, arises out of the December 22, 2008 failure of a coal ash containment dike at TVA's Kingston Fossil Plant (the "KIF plant"). *See Mays v. TVA*, 699 F. Supp. 2d 991, 1000-04 (E.D. Tenn. 2010). As a result of this dike failure, approximately 54 million cubic yards of coal ash sludge spilled from an 84-acre containment area to an adjacent area of about 300 acres, consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties. *Id.* In general, plaintiffs allege that they own property and/or own and conduct business in the area of the coal ash spill and that TVA is liable to them in tort under theories of negligence, gross negligence, trespass, strict liability, nuisance, and negligence *per se* for alleged damages to real and personal property, diminution in value of real property and/or lost rental value, lost revenue and profit, loss of income, and loss of use and enjoyment of real property and/or business losses, all arising and caused by the coal ash spill [*See* Doc. 1].

**II.    Standard of Review**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion brought under Federal Rule of Civil Procedure 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). In reviewing either a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of

those allegations that would entitle them relief." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Thus, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard does not require "'detailed factual allegations.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Moreover, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'"

3

*Iqbal*, 129 S.Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

**III.     Analysis**

Only three of the forty-four plaintiffs in this action are the subject of TVA's motion: Eye Centers of Tennessee, LLC ("Eye Centers"), an eye care center, Browder Hardware Inc. ("Browder"), a convenience store, and Sean D. Stephens ("Stephens"), a real estate agent. TVA asserts that, according to the allegations in the complaint, as of December 22, 2008, the date of the ash spill, plaintiffs did not own any real property that was physically damaged by the spill. TVA asserts that plaintiffs only allege that the "business income" of their respective businesses "diminished in value" as a result of the spill [Doc. 1, ¶¶ 37, 48, 64]. TVA argues that per the economic loss rule recognized in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) and absent allegations of personal injury or physical damage to property, plaintiffs cannot recover solely for alleged economic losses.

Plaintiffs disagree, arguing that TVA's motion is premature and that their complaint contains sufficient factual allegations that TVA's conduct leading up to the coal ash spill caused damage to plaintiffs' businesses and property interests, all of which are located near and around the area of the spill. Plaintiffs point to factual allegations contained in the complaint and affidavits from plaintiffs or their principals and/or agents which allege that since the ash spill, their businesses have not grown at projected rates and that their income, business revenues, and profits have decreased as a result of the spill [*See* Doc. 21-1]. Plaintiffs also argue that the economic loss rule is inapplicable to their claims because under

4

Tennessee law, that rule is limited to claims for products liability or claims involving the sale of goods.

In *United Textile Workers of Am., AFL-CIo v. Lear Siegler Seating Corp.* ("*Lear Siegler*"), 825 S.W.2d 83 (Tenn. Ct. App. 1990), *perm. app. denied*, the Tennessee Court of Appeals traced the origins of the economic loss rule to *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), noting that in *Robins*, the "rule was expressed that liability is not legally recognized for indirect economic damages." *Lear Siegler*, 825 S.W.2d at 83-84. In *Robins*, the defendant, a dry dock company, negligently damaged a ship's propeller while the ship was at dry dock, resulting in a delay in the ship being returned to service. *Id.*, 275 U.S. at 307-08. As a result of the defendant's negligence, the plaintiff, who was the time charterer of the ship, lost the use of the ship for the period of the delay and sued the defendant in tort for economic losses. *Id.* The United States Supreme Court reversed the court of appeals, which had allowed the plaintiff to recover, noting that "as a general rule . . . a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread that far." *Id.* at 309 (internal citation omitted); *see also Lear Siegler*, 825 S.W.2d at 83-84.

The issue identified by the Tennessee Court of Appeals in *Lear Siegler* was "whether the policy of the State of Tennessee should permit recovery for indirect economic loss absent personal injury or property damage." *Id.*, 825 S.W.2d at 83. The plaintiffs, hourly workers

5

at a facility in an industrial park, had brought the action for lost earnings against the defendant, a factory located in the industrial park. *Id.* Inside the defendant's factory, the defendant had stacked metal racks next to a propane tank storage area. *Id.* The metal racks eventually fell into the tank storage area, causing a tank to leak and resulting in the evacuation of the industrial park, including the facility where the plaintiffs worked. *Id.* The plaintiffs sued the defendant, arguing that the defendant was liable for lost wages they sustained for the day the park was closed. *Id.* Notwithstanding the defendant's negligence, the trial court denied recovery based on the economic loss rule "because no physical harm accompanied the economic loss." *Id.* at 84. Citing *Robins*, the Tennessee Court of Appeals affirmed that ruling, concluding "that this Court should follow the majority rule and disallow recovery for purely economic loss absent physical injury or property damage." *Id.* at 87.

As noted by plaintiffs, a group of cases from a federal court sitting in Tennessee address the economic loss rule under Tennessee law. *See Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915 (W.D. Tenn. 2010); *Loft v. Swift Transp. Co.*, 694 F. Supp. 2d 923 (W.D. Tenn. 2010); *Pascarella v. Swift Transp. Co.*, 694 F. Supp. 2d 933 (W.D. Tenn. 2010); *Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947 (W.D. Tenn. 2010). The issue in *Ham* and the companion cases was the application of the economic loss rule to negligence claims arising from agreements for the provision of testing services for commercial drivers licenses ("CDL") by the defendant, who operated a trade school and a third-party CDL tester. *Id.*, 694 F. Supp. 2d at 917. The plaintiffs were students at the defendant's trade school. *Id.*

6

In *Ham*, the court noted the relative lack of guidance on the economic loss rule from the Tennessee Supreme Court, along with the available case law from the Tennessee court of appeals, including *Lear Siegler*. *Id.* at 921. *Ham* found that the court of appeals had "implicitly restricted the economic loss doctrine to claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss[]" *id.* at 922 (citing *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 173-74 (Tenn. Ct. App. 2001)), and appeared to have restricted the economic loss rule to products only. *Id.* (citing *McLean v. Bourget's Bike Works, Inc.*, No. M2003–01944–COA–R3–CV, 2005 WL 2493479, at *5 (Tenn. Ct. App. Oct. 7, 2005)). *Ham* also addressed a restriction of the economic loss rule discussed in *Ins. Co. of N. Am. v. Cease Elec. Inc.* ("*Cease*"), 688 N.W.2d 462 (Wis. 2004), a case from the Wisconsin Supreme Court, and noted that the Wisconsin court's basis for the restriction was similar to a basis articulated by the Tennessee Supreme Court when it limited a plaintiff to UCC remedies for economic losses for a defective product, rather than permitting damages under a negligence theory. *Id.* at 922-23. *Ham* concluded that it believed "the Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services[]" *id.* at 923, and declined to apply the economic loss rule to the agreements at issue in that case.

7

Plaintiffs assert that as found in *Ham* and its companion cases, federal district courts applying Tennessee law have declined to extend the economic loss rule beyond cases involving the sale of goods and, as determined in *Corso Enters., Inc. v. Shop at Home Network, Inc.*, No. 3:04-0260, 2005 WL 2346986, at *6-*7 & n.7 (M.D. Tenn. Sept. 6, 2005), "governance by the UCC of the contract at issue is a prerequisite to the application of the economic loss doctrine and resulting preclusion of recovery in tort." *Ham*, 694 F. Supp. 2d at 922 (citing *Corso*, 2005 WL 2346986, at *6-*7 & n.7).

This Court, however, does not find Tennessee courts to have limited the economic loss rule to the extent described in *Ham* and the companion cases. While *Ham* noted the application of the economic loss rule in *Lear Siegler*, which applied the rule to a tort situation not involving a contract for goods or services or a products liability action, *Ham* did not offer an explanation for why the *Leah Siegler*'s application of the economic loss rule to a tort situation was in error or limited to the facts of that case. *Id.* Instead, *Ham* only noted the dissent's characterization of the majority opinion in *Lear Siegler* as a mechanical application of a "dated" rule. *Id.* at 922. Furthermore, in almost identical language, the holdings of the *Ham* court and the companion cases are based on what the *Ham* court called the "implicit" and "apparent" restrictions in *Trinity* and *McLean* of the economic loss rule to products liability claims or claims involving the sale of goods. *Id.*

Upon review, this Court finds neither *Trinity* nor *McLean* to abrogate *Lear Siegler*, which applied the economic loss rule in a tort context which did not involve a contract for

8

the sale of goods or services or a products liability action.[1]  Moreover, while *Ham* cited *Corso* for the proposition that federal district courts applying Tennessee law have declined to extend the economic loss rule beyond cases involving the sale of goods, the Court does not find *Corso* to be so limiting.  *Ham*, 694 F. Supp. 2d at 922.  In *Corso*, the court held that the economic loss rule of the UCC did not apply because the subject contract was not a UCC contract.  *Id.*, 2005 WL 2346986, at *6-*7.  *Corso* did not abrogate or implicate *Lear Siegler* and did not hold that the economic loss rule was inapplicable outside the context of a UCC contract.

The Court also notes *Ham* reference to *Cease*, the Wisconsin case, in discussing the application of the economic loss doctrine.  *See Cease Elec. Inc.*, 688 N.W.2d 462.  *Ham* cited a statement from *Cease* that the "genesis of the economic loss doctrine lies in products liability cases[]"  *Ham*, 694 F. Supp. 2d at 922 (quoting *Cease*, 688 N.W.2d at 467), and described *Cease* as stating that "[s]ince the UCC is inapplicable to service contracts . . . it

---

[1] In *Trinity*, the Tennessee Court of Appeals noted its agreement with the "principle that a breach of a contract for the sale of goods resulting in consequential damages is governed by the U.C.C. despite the fact that the pleadings allege the seller negligently performed the contract."  *Id.*, 77 S.W.3d at 173.  *Trinity* does not hold, implicitly or otherwise, that the economic loss rule is restricted to only claims involving products liability or claims arising out of the sale of goods.

In *McLean*, the plaintiff sued a motorcycle manufacturer for "economic injuries" under a negligent design products liability theory, without asserting any personal injury or damage to any other property.  *Id.*, 2005 WL 2493479, at *4-*5.  The *McLean* court affirmed the trial court's dismissal of the plaintiff's claim, noting that the economic loss rule "comes into play when the purchaser of a product sustains economic loss without personal injury or damage to property other than the product itself.  In that circumstance, the purchaser must seek a remedy in contract, not tort."  *Id.* at *5.  The *McLean* court did not abrogate *Lear Siegler* and did not hold that the economic loss rule was inapplicable in a tort context not involving a products liability claim.

9

would not apply the economic loss doctrine to suits seeking recovery for negligently provided services." *Ham*, 694 F. Supp. 2d at 922 (citing *Cease*, 688 N.W.2d at 470, 472. According to *Ham*:

> This rationale for limiting the economic loss doctrine echoes that expressed by the Tennessee Supreme Court in deciding to limit a plaintiff suing for a defective product who sustained only economic losses to remedies under the UCC instead of allowing the plaintiff to proceed under a theory of negligence. [*Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 & n.8 (Tenn. 1995)]. If the existence of UCC remedies provides the justification for not allowing the plaintiff to sue in tort, the absence of UCC remedies should counsel in favor of allowing tort recovery. Thus, the Court believes that, like the Wisconsin Supreme Court, the Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services.

*Id.* at 922-23.

As pointed out by TVA, a recent decision from a federal district court applying Wisconsin law noted the difference between the economic loss rule in the context of a case involving contracts and a case in which no contract or privity between the parties is involved—the situation presented in *Lear Siegler* and in this case. *See Custom Underground, Inc. v. Mi-Tech Servs., Inc.*, 2011 WL 5008343 (E.D. Wis. Oct. 20, 2011). *Custom Underground* involved a claim for professional negligence in which the plaintiff, a contractor, alleged that it sustained damages in reliance on plans and specifications prepared by the defendant, a designer. *Id.*, 2011 WL 5008343, at *1. Importantly, the *Custom Underground* court noted that there was no services agreement or contractual privity between the plaintiff and the designer, *id.* at *3-*4, and that the sole alleged losses were economic.

10

*Id.* at *4. The *Custom Underground* court framed the plaintiff's argument as being that "this is a case involving the provision of services and, as the Wisconsin Supreme Court has held in [*Cease*], the economic loss doctrine is inapplicable to claims for the negligent provision of services." *Id.*, 2011 WL 5008343, at *4. However, the court stated, "it would appear that the plaintiff's argument . . . conflates the economic loss doctrine's applicability in cases where contractual privity exists between the parties with Wisconsin's principles regarding recovery of economic losses in tort where no contractual privity exists[.]" *Id.* The court stated that the decision in *Cease* "did not address situations, such as here, in which no contractual privity exists between the parties[,]" concluding that it was "ambiguous" as to what Wisconsin courts would do in a situation that did not involve any contractual privity between the parties and that it would "adhere to the clear dictates of Wisconsin law . . . that recovery of economic loss in tort is only available when the economic loss is combined with damage to the plaintiff's person or property." *Id.*

Given the foregoing analysis of *Lear Siegler* and *Ham* and the cases discussed therein, the Court respectfully disagrees with *Ham* and the companion cases that the Tennessee Supreme Court would not be likely to extend the economic loss rule to the tort situation presented in this case. As noted in *Acuity v. McGhee Eng'g*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008), *perm. app. denied*, "[t]he economic loss doctrine provides that, absent privity, one may not recover in negligence where there is no injury to person or property." *Id.* at 734

11

(citing *Lear Siegler*, 825 S.W.2d at 87).[2] Furthermore, because *Lear Siegler* is a published decision by the Tennessee Court of Appeals that has not been overruled or modified by a subsequent decision of the Tennessee Supreme Court, it is controlling authority on this Court. *See Meadows v. State*, 849 S.W.2d 748, 752 (Tenn. 1993) (stating that in Tennessee, "the published opinions of the intermediate appellate courts are opinions which have precedential value and may be relied upon by the bench and bar of this state as representing the present state of the law with the same confidence and reliability as the published opinions of [the Tennessee Supreme Court], so long as either are not overruled or modified by subsequent decisions"); *Allen v. State*, No. M2003-00905-COA-R3-CV, 2004 WL 1745357, at *2 (Tenn. Ct. App. Aug. 3, 2004) (noting that because the Tennessee Supreme Court denied permission to appeal and directed the publication of the court of appeals' opinion, the decision of the appellate court was controlling authority).

**IV.  Conclusion**

For the reasons stated above, TVA's Motion for Judgment on the Pleadings as to Three Plaintiffs for Failure to State a Claim Upon Which Relief Can Be Granted [Doc. 13] will be **GRANTED** and the claims of plaintiffs Eye Centers of Tennessee, LLC, Browder

---

[2]*Acuity* involved a services contract and held that the plaintiff's claim for economic loss could go forward because "Tennessee law recognizes an exception to the economic loss doctrine: despite the absence of privity, a plaintiff may maintain an action for purely economic loss based upon negligent supervision or negligent misrepresentation." *Id.*, 297 S.W.3d at 734 (citing *John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991)). *See also Tan v. Wilbur Smith Assocs., Inc.,* No. 2:09-CV-25, 2011 WL 3421320 (E.D. Tenn. Aug. 4, 2011).

12

Hardware Inc., and Sean D. Stephens will be **DISMISSED**, pursuant to Rule 12(c), for failure to state a claim upon which relief may be granted.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE